UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
JOE HAND PROMOTIONS, INC.,

                 *Plaintiff*,          **Memorandum and Order**

     v.                        20-CV-557 (KAM)(RLM)


ALY MOHAMED, et al.,

                 *Defendants*.
------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Joe Hand Promotions, Inc. ("Plaintiff") initiated this action against Al Bait Baitak Corp, which does business as Your House Café (the "Establishment"), and against Aly Mohamed ("Mr. Mohamed"), individually, and as an officer, director, shareholder, and/or principal of the Establishment, (collectively, "Defendants"), alleging violations of the Federal Communications Act of 1934 and copyright infringement in violation of the Copyright Act.  47 U.S.C. §§ 553, 605; 17 U.S.C. § 101, *et seq.*; (*see generally* ECF No. 1, Complaint ("Compl.").)

        Upon service of process upon the Defendants, and the failure of Defendants to appear, answer, or respond to the Complaint, Plaintiff now moves for default judgment.  (ECF No. 17-1, Plaintiff's Memorandum in Support of Motion for Default Judgment "Pl. Mem." at 8-16.)  Defendants have not appeared,

answered the Complaint, or submitted any opposition to Plaintiff's motions for entry of default judgment, despite being properly served with the summons and complaint and having received both notice and an opportunity to oppose the motion for a default judgment. (*See* ECF No. 4, Summons Issued as to Mohamed and the Establishment; ECF No. 8 & 9, Summons Returned Executed; ECF No. 17-10, Certificate of Service of Req. for Certificate of Default Judgment; Pl. Mem at 1.)

For the reasons set forth below, the court GRANTS Plaintiff's motion for entry of default judgment against Mr. Mohamed and the Establishment, jointly and severally, and orders that judgment be awarded in favor of Plaintiff in the amount of $7,250, comprised of (1) basic statutory damages under the Communications Act of $1,450, (2) enhanced statutory damages under the Communications Act of $2,900, (3) basic statutory damages under the Copyright Act of $1,450, and (4) enhanced statutory damages under the Copyright Act of $1,450.

## Background

### I. Facts

Where, as here, a defendant defaults, a court must accept the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Bricklayers and Allied Craftworkers Loc. 2 v. Moulton Masonry &*

*Constr., LLC*, 779 F.3d 182, 187-88 (2d Cir. 2015). Accordingly, the Court accepts Plaintiff's well-pleaded factual allegations as true for purposes of reviewing Plaintiff's motion for default judgment.

Plaintiff acquired exclusive rights to distribute to commercial establishments the Wilder vs. Fury Match, including all undercard matches and the entire television broadcast, which was broadcasted on December 1, 2018 (the "Program") via closed circuit television, encrypted "IPTV", cable, or satellite signal. (Compl. at ¶ 6.) Plaintiff, by contract, is also the copyright holder as to commercial distribution of the Program. (*Id.*) The Program originated via satellite uplink and was subsequently retransmitted to cable systems and satellite companies via satellite signal. (*Id.* at ¶ 19.) Plaintiff entered into subsequent agreements with various business entities in New York State, enabling these businesses to exhibit the Program to their patrons. (*Id.* at ¶ 20.) Plaintiff charges commercial establishments to air the Program using a graduated fee schedule, which fixes prices according to the size of the establishment and its fire code occupancy. (ECF No. 17-4, Hand. Aff. ¶ 5; ECF No. 17-5, Commercial Pricing Schedule.)

In order to combat signal piracy, Plaintiff hired investigative agencies to retain auditors to canvas and identify establishments that exhibited the Program without authorization

from, or payment to, Plaintiff. (Pl. Mem at 3.) Plaintiff provided the auditors with a list of customers that were authorized to broadcast the Program in order to ensure the auditors would only visit locations that were not authorized to broadcast the Program. (ECF No. 17-6, Legal List; Hand Aff. at ¶ 8.) Plaintiff includes in its motion for default judgment a site inspection form filled out by one of the retained auditors, Cosmo Lubrano ("Mr. Lubrano"). (ECF No. 17-7, Site Inspection Form.) Mr. Lubrano states that on December 1, 2018, the night of the Program, he entered the Establishment and saw five televisions airing the Program for patron viewing. (*Id.)* Lubrano was not required to pay a cover charge to enter the Establishment and estimated the capacity of the Establishment at 1-100 people. (*Id.*) Mr. Lubrano also took photographs and videos which show the Establishment, airing the Program. (ECF No. 17-8, "Site Inspection Photographs"; Hand Aff. at ¶ 11.)

Plaintiff's affidavit states that Defendants and/or their agents unlawfully intercepted, received, and/or de-scrambled the Program's broadcast signal and thereafter exhibited the Program at the Establishment without Plaintiff's authorization. (Hand Aff. at ¶¶ 23-24.) Plaintiff further states that in order to broadcast the Program, Defendants either redirected a wireless signal from an adjacent residence to the Establishment, misrepresented the Establishment as a residence,

4

removed an authorized satellite receiver from a residence to the Establishment, or unlawfully utilized over-the-top wireless internet streaming technologies. (*Id.* at ¶ 24.) According to Joe Hand ("Mr. Hand"), the individual owner of Joe Hand Promotions, the Program cannot be mistakenly or innocently intercepted. (Hand. Aff ¶ 12.)

## II. **Procedural History**

Plaintiff filed the instant action on January 31, 2020, naming Mohamed and the Establishment as Defendants. (*See generally* Compl.) Plaintiff thereafter properly served the Summons and Complaint on Defendants. (ECF No. 1, Compl.; ECF No. 4, Summons Issued as to Mohamed and the Establishment; ECF Nos. 8 & 9, Summons Returned Executed as to Mohamed and the Establishment.) The Defendants failed to file an answer, and Plaintiff took no further immediate action. On July 8, 2020, Magistrate Judge Roanne L. Mann ordered Plaintiff to show cause as to why the case should not be dismissed for lack of prosecution, and ordered the Plaintiff to promptly serve copies of the Order on Defendants. (Dkt. Order July 8, 2020.) Plaintiff filed a timely response to the order on July 15, 2020, citing administrative concerns related to the COVID-19 pandemic, and submitted a certificate of service of the Order on Defendants. (ECF No. 12, Plaintiff Response to First Order to

Show Cause; ECF No. 11-3, Certificate of Service of Order to Show Cause.)

Upon Plaintiff's request, and in light of Defendants' failure to answer the Complaint or otherwise defend the action, the Clerk of the Court entered default against Defendants on July 20, 2020. (ECF No. 11, Plaintiff Request for Certificate of Default; ECF No. 13, Clerk's Entry of Default.) Plaintiff took no further immediate action, and Magistrate Judge Roanne L. Mann again directed Plaintiff to show cause as to why the case should not be dismissed for lack of prosecution, again ordering the Plaintiff to promptly serve copies of the Order on Defendants. (Dkt. Order Oct. 28, 2020.) Plaintiff filed a timely response to the order on November 3, 2020, again citing administrative concerns related to the COVID-19 pandemic. (ECF No. 18, Plaintiff Response to Second Order to Show Cause.) Plaintiff also provided evidence it properly served the October 28 Order on Defendants. (ECF No. 16, Certificate of Service of Second Order to Show Cause.)

On November 3, 2020, Plaintiff filed a motion for default judgment. (ECF No. 17, Motion for Default Judgment.) Plaintiff seeks (1) entry of a default judgment; (2) basic statutory damages in the amount of $10,000 against Defendants, jointly and severally, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) for violation of 47 U.S.C. § 605(a); (3)

6

enhanced statutory damages in the amount of $10,000 against Defendants, jointly and severally, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) for violation of 47 U.S.C. § 605(a); (4) basic statutory damages in the amount of $5,000 against Defendants, jointly and severally, pursuant to 17 U.S.C. § 504(c)(1) for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101, *et seq.*; and (5) enhanced statutory damages in the amount of $5,000 against the Defendants, jointly and severally, pursuant to 17 U.S.C. § 504(c)(2) for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101, *et seq.* (Pl. Mem. at 8-16.)  Plaintiff properly served its motion for default judgment on Mr. Mohamed, at the last known address of Mr. Mohamed's residence, and on the Establishment, at the last known address of its principal place of business. (ECF No. 17-10, Certificate of Service.)  To date, Defendants have not answered or otherwise responded to Plaintiff's Complaint, nor have Defendants responded to Plaintiff's motion for entry of default judgment.

## Discussion

Pursuant to Federal Rule of Civil Procedure 55, a movant must complete a two-step process to obtain a default judgment. *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011); *La Barbera v. Fed. Metal & Glass*

*Corp.*, 666 F. Supp. 2d 341, 346-47 (E.D.N.Y. 2009). First, the Clerk of the Court must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Second, upon the Clerk's entry of default, the movant "may then make an application for entry of a default judgment, pursuant to Fed R. Civ. P. 55(b)." *Rodriguez*, 784 F. Supp. 2d at 123. The court must exercise "sound judicial discretion in determining whether the entry of default judgment is appropriate." *Trs. Of Local Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-cv-322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011) (quoting *Badian v. Brandain Commc'ns Corp.*, No. 03-cv-2424, 2004 WL 1933573, at *2 (S.D.N.Y. Aug. 30, 2004)), *adopted by Trs. Of Local Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-cv-322, 2011 WL 865331 (E.D.N.Y. Mar. 10, 2011). In evaluating a motion for default judgment, "the [c]ourt must accept as true the well-pleaded allegations in the complaint," except as to damages. *Id.* at *2 (citing *Credit Lyonnais Sec. (USA), Inc v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999)).

Here, the Clerk of the Court entered a default against Defendants on July 20, 2020. (Dkt. Order July 20, 2020.) After adequately responding to the order to show cause, Plaintiff

filed the unopposed motion for default judgment presently before the court.  Plaintiff also provide documentation that it properly served the default motion on Defendants at the last known residence of Mohamed, and at the principal place of business of the Establishment, pursuant to Eastern District Local Civil Rule 55.2(c).  (*See* ECF No. 17-10, Certificate of Service of Default Judgment.)  As previously noted, Defendants have neither appeared nor moved to vacate the Clerk's entry of default.  Consequently, Plaintiff has completed the necessary procedural steps to obtain a default judgment. *See Bricklayers Ins. & Welfare Fund v. David & Allen Contracting, Inc.*, No. 05-cv-4778, 2007 WL 3046359 at *2 (E.D.N.Y. Oct. 16, 2007 ("In civil actions, when a party fails to appear after being given notice, the court normally has justification for entering default.") (citing *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)).

### I.    Corporate Liability of the Establishment

Defendants' default, however, "does not necessarily conclusively establish . . . defendant[s'] liability." *Trs. Of the Plumbers Lcl. Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05-cv-1665, 2007 WL 3124612 at *3 (E.D.N.Y. Oct. 23, 2007).  As such, the court must still determine whether "plaintiff has stated a cause of action." *Bd. of Trs. Of the UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, No. 08-cv-2325,

2009 WL 982424, at *3 (E.D.N.Y. Apr. 10, 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *Philip Gen. Constr.*, 2007 WL 3124612, at *3 ("Nevertheless, '[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'") (alteration in original) (quoting *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989)).

## A. Violations of Communications Act

Here, Plaintiff's Complaint alleges that the Establishment violated either 47 U.S.C. § 553 or 47 U.S.C. § 605 through the unauthorized interception of Plaintiff's cable and satellite transmission. (Compl. ¶¶ 25-35; Pl. Mem at 2.) Section 553(a)(1) provides in relevant part that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553. Section 605(a) provides in relevant part that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication (or any information contained therein contained) for his own

> benefit or for the benefit of another not
> entitled thereto.

47 U.S.C. § 605.

Sections 553 and 605 are not mutually exclusive, and both statutes apply when certain television programming is transmitted over *both* cable and satellite. *Joe Hand Promotions, Inc. v. Sylvestre*, No. 20-cv-822, 2021 WL 810338, at *3 (E.D.N.Y. Mar. 3, 2021) (citing *Int'l Cablevision Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996)); *Kingsvision Pay-Per-View Corp v. Keane*, No. 02-cv-5173, 2006 WL 1704474 at *3 (E.D.N.Y. June 16, 2006). Plaintiff, however, acknowledges that Plaintiff is unaware of the exact method by which the Establishment intercepted the Program, specifically noting that:

> Prior to engaging in discovery, Plaintiff is unable to determine the manner in which Defendants obtained the broadcast. However, it is logical to conclude that Defendants utilized one of the above described methods or another to intercept and exhibit the Broadcast without entering into an agreement to obtain it lawfully from Plaintiff, the legal rights holder for commercial exhibition.

(Compl. at ¶ 24.)

Moreover, in its default motion, Plaintiff has elected to recover damages from both Defendants under Section 605, rather than Section 553. (Pl Mem. At 6). ("Through Defendants' admissions, Defendants have admitted to the interception of

radio and satellite communication and therefore Plaintiff has established the elements of § 605 and elects to recover under the § 605.").  Accordingly, the court will assess the Establishment's liability under Section 605.

Plaintiff's undisputed allegations and unopposed submissions establish that the Establishment violated Section 605. Although by it text, Section 605 applies explicitly to radio transmissions, courts have held that Section 605 applies to cases involving "cable-borne transmissions [that] originate as satellite transmissions." *Keane*, 2006 WL 1704474, at *3 (citing *Sykes*, 75 F.3d at 130); *Sylvestre,* 2021 WL 810338, at *3.  Courts in the Eastern District of New York have also held that a plaintiff's allegations state a valid claim under Section 605(a) when "the plaintiff pleads that (1) the plaintiff holds an exclusive license to broadcast the Event at issue; (2) the entity defendant had no right to commercially broadcast the transmission unless it contracted with the plaintiff through a licensing agreement; and (3) the entity defendant screened the program despite failing to contract with the plaintiff for authority to do so."  *Joe Hand Promotions, Inc. v. Skaf*, No. 19-cv-3391, 2020 WL 3035351, at *5 (E.D.N.Y Mar. 17, 2020) (citing *J&J Sports Prods., Inc. v. Inga*, 18-cv-2542, 2019 WL 1320278, at *4 (E.D.N.Y. Mar. 22, 2019).

Here, Plaintiff obtained exclusive distribution rights to the Program and subsequently entered into agreements with various commercial entities in New York State. (Compl. ¶¶ 19-20.) These agreements permitted authorized commercial entities to broadcast the Program to their patrons. (*See id.*) As alleged in the Complaint, the Establishment, without entering into a sub-licensing agreement or obtaining Plaintiff's authorization, knowingly and willfully intercepted, received, and/or descrambled the Program's broadcast signal via satellite transmission and thereafter exhibited the Program to its patrons for commercial advantage and private financial gain. (*Id.* ¶ 23.) According to Plaintiff's uncontested allegations, the Establishment likely redirected a wireless signal from an adjacent residence, misrepresented itself as a residence, or impermissibly utilized a residential satellite receiver to intercept the Program's broadcast signal. *(Id.* ¶ 24.) Further, as observed by independent auditor Mr. Lubrano, the Establishment exhibited the Program to its patrons on five different television screens on December 1, 2018. (*See* ECF No. 17-7, Site Inspection Form.) Mr. Lubrano provided photographs to support his written observations. (ECF No. 17-8, Photographs of Site Inspection.) Taken together, Plaintiff's allegations support a finding that the Establishment is liable for damages under Section 605.

**B. Violations of the Copyright Act**

Plaintiff also seeks an award for infringement of its copyright under the Copyright Act.  17 U.S.C. § 101 *et seq*.; (*see* Compl. ¶ 1.)  The owner of a copyright has the exclusive right to "reproduce  the copyrighted works . . . [and] distribute copies . . . of the copyrighted work to the public by sale . . . or by rental."  17 U.S.C. § 106.  The Copyright Act prohibits persons from "violat[ing] any of the exclusive rights of the copyright owner as provided by section[] 106 . . . "  17 U.S.C. § 501(a); *see Fitzgerald Publ'g Co. v. Baylor Bubl'g Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986).  In order to prove the elements of a copyright infringement, a plaintiff must show: (1) ownership of a valid copyright, and (2) that defendant violated one of the exclusive rights held by the plaintiff in the work. *Joe Hand Promotions, Inc. v. Miller*, No. 20-cv-132 (KAM)(CLP), 2021 WL 1394508, at *4 (E.D.N.Y. Feb. 26, 2021), *adopted by Joe Hand Promotions, Inc. v. Miller*, No. 20-cv-132 (KAM), 2021 WL 1207319, at *1 (E.D.N.Y. Mar. 31, 2021).

A plaintiff can establish *prima facie* evidence of ownership of a valid copyright by showing a "certificate of a [copyright] registration made before or within five years after first publication of the work."  17 U.S.C. § 410(c); *see also CJ Prod. LLC v. Snuggly Plushez LLC,* 809 F. Supp. 2d 127, 142 (E.D.N.Y. 2011); *Yurman Design Inc. v. Golden Treasure Imports,*

14

*Inc.*, 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003). Though the
presumption of validity is rebuttable, it is the defendant's
burden to prove the invalidity of the copyright. *See Fonar Corp
v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997); *see also Folio
Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 763 (2d Cir.
1991)(citation omitted).

     Here, Plaintiff has demonstrated ownership of the
copyright to the broadcast of the Program by providing the
Certificate of Registration filed with the U.S. Copyright Office
on February 7, 2019. (ECF No. 17-3, Certificate of Copyright
Registration.) Although the registration was obtained on
February 7, 2019, after the infringement occurred on December 1,
2018, this is not a bar to Plaintiff's recovery because the
registration was obtained within five years of the publication
of each work. *See Lewinson v. Henry Holt & Co.*, 659 F. Supp. 2d
547, 559 (S.D.N.Y. 2009) (citations omitted) (holding that
"[f]or any work created after January 1, 1978, copyright
automatically inheres upon the work's creation"). Although the
Copyright is registered to Showtime Networks Inc. as the author
of the work, Showtime assigned Plaintiff its "rights, interests,
or powers in the Event . . . to enforce and initiate legal
proceeding[s] . . . for copyright infringement." (ECF No. 17-2,
Exclusive Commercial Distribution Agreement.) Because
Defendant has not appeared in this action, Plaintiff's proof

that it holds the valid copyright has not been challenged, and the Court finds that Plaintiff has satisfied the first element required to establish a claim for infringement. *See Miller*, 2021 WL 1394508, at *5.

Second, Plaintiff also must establish that Defendants violated one of the exclusive rights held by the Plaintiff in the copyrighted work. *Id.* at *4. "[B]oth unauthorized production and unauthorized distribution of copies of copyrighted material constitute an infringement of the copyright." *Id.* at *5 (quoting *Paramount Pictures Corp. v. Doe*, 821 F. Supp. 82, 89 n.6 (E.D.N.Y. 1993). Here, Plaintiff has provided supporting evidence in the form of the auditor's affidavit, along with a list of New York establishments authorized to air the Program, showing Defendants broadcasted and distributed the Program without authorization. (ECF No. 17-7, Site Inspection Form; ECF No. 17-6, List of Authorized Establishments.) As the Defendants have not appeared, the Defendants have conceded the truthfulness of the affidavit and the list of establishments authorized to air the Program, which list does not include the Defendants. The court thus finds Plaintiff has also satisfied the second element of the copyright infringement claim.

**II.  Individual Liability of Mr. Mohamed**

Plaintiff also names Mr. Mohamed as "officer, director, shareholder and/or principal" of the Establishment. (Compl. ¶ 8.)  Plaintiff alleges upon information and belief that Mr. Mohamed was the individual with supervisory capacity and control over activities occurring within the Establishment on December 1, 2018. (*Id.* ¶ 9)  Plaintiff further alleges that Mr. Mohamed received a financial benefit from the operations of the Establishment on the night of December 1, 2018.  (*Id.* ¶ 10.) "Individual liability under the Cable Act requires that the individual authorize the underlying violations." *Sylvestere,* 2021 WL 810338, at *4 (quoting *J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009)). "Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct."  *Id.*

The undisputed allegations in the Complaint establish that Mr. Mohamed is an officer, director, shareholder, and/or principal of the Establishment; that Mr. Mohamed had supervisory capacity and control over the activities in the Establishment on the date of the alleged violation; that Mr. Mohamed had close control over the internal operating procedures of the Establishment; that Mr. Mohamed was present at the Establishment

during the broadcast of the Program; and that he received a financial benefit as a result of the unauthorized broadcast. (*See* Compl. ¶¶ 8-12; Hand Aff. at ¶ 11; ECF No. 17-7, Site Inspection Form; ECF No. 17-8, Photographs of Site Inspection); *see also Joe Hand Promotions, Inc. v. Elmore*, No. 11-cv-3761, 2013 WL 2352855, at *5 (E.D.N.Y. May 29, 2013) ("Individual liability under the Cable Act requires that the individual authorize the underlying violations.") (quoting *J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469, 473 (E.D.N.Y.2009)) (citing *J & J Sports Prods., Inc. v. Benson*, No. 06-CV-1119, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007)). Therefore, the court finds that Mr. Mohamed is jointly and severally liable with the Establishment for violation of 47 U.S.C. § 605(a) discussed above.

The uncontested allegations in the complaint similarly establish that Mr. Mohamed had sufficient requisite control and financial interest to be held vicariously liable for the violations of the Copyright Act. *See Miller,* 2021 WL 1394508, at *10. Accordingly, the court finds that Plaintiff's award shall be limited to a single and joint recovery against the individual Defendant, Mr. Mohamed, and the corporate Defendant, the Establishment.

## **Damages**[1]

As previously noted, in the context of a motion for default judgment, allegations pertaining to liability are deemed admitted, but those pertaining to damages must be proven by the movant. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 9730 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). After liability is determined, damages must be established "to a 'reasonable certainty.'" *Duro v. BZR Piping & Heating, Inc.*, No. 10-cv-879, 2011 WL 710449, at *2 (E.D.N.Y. Jan. 26, 2011) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)), *adopted by* 2011 WL 744156 (E.D.N.Y. Feb. 22, 2011). The court need not hold a hearing to determine damages "as long as it [has] ensured that there [is] a basis for damages specified in the default judgment." *Id.* (alterations in original). When evaluating damages, the court "may rely on affidavits or documentary evidence." *Id.* (citing *Tamarin v. Adam Caterers,*

---

[1] The award of damages under the Communications Act does not preclude additional recovery under the Copyright Act. *See* Miller, 2021 WL 1394508 at *1 (awarding statutory damages under both the Communications Act and the Copyright Act); *see also Innovative Sports Mgmt., Inc. v. Acevedo*, No. 19-cv-1690, 2020 WL 5134423, at *7 (same), *adopted by* 2021 WL 6063250, (E.D.N.Y. Oct. 14, 2020).

*Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Chun Jie Yin v. Kim*, No. 07-cv-1236, 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008)).

## I.  Basic Statutory Damages under Section 605

Plaintiffs who seek compensation under Section 605 may elect to seek either actual damages and lost profits or basic statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i); *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999). Plaintiff seeks statutory damages. (Pl. Mem. at 6.) Where, as here, a party elects to recover statutory damages, a party may recover a damages award within the statutory range of $1,000 to $10,000 for each violation of § 605(a). 47 U.S.C. § 605(e)(3)(C)(i)(II). The extent of damages awarded pursuant to Section 605 "rests in the sound discretion of the court." *J&J Sports Prods., Inc. v. Hot Shots, Inc.*, No. 09-cv-1884 (FB)(SMG), 2010 WL 3522809, at *2 (E.D.N.Y. Apr 27, 2010) (citing 47 U.S.C. § 605(e)(3)(C)(i)(II)), *adopted by J&J Sports Prods., Inc. v. Hot Shots, Inc.*, No. 09-cv-1884 (FB), 2010 WL 3523003, at *1 (E.D.N.Y. Sept. 2, 2010).

As other courts in this district have noted, Section 605 provides no statutory definition for the term "violation." *See, e.g., Garden City Boxing Club, Inc. v. Perez,* No. 05-cv-3713, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006). "[M]ost cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one

violation." *Id.* Here, the unauthorized broadcast of the Program occurred on December 1, 2018, thus taking the form of one continuous, night-long event, or one violation. (*See* Compl. ¶ 6; ECF No. 17-7, Site Inspection Form.) As such, the court finds that Defendants are subject to liability for one violation of Section 605.

"Although § 605 provides little guidance as to how to set damages within the statutory range, 'courts in [the Second Circuit] have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events'" by commercial establishments. *Kingvision Pay-Per-View Ltd v. Autar*, 426 F. Supp. 2d 59, 63 (E.D.N.Y. 2006) (quoting *Graden City Boxing Club Inc. v. Morales*, No. 05-cv-65, 2005 WL 2476264, at *6 (E.D.N.Y. Oct. 7, 2005)); *see also Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 115 (E.D.N.Y. 2011); *Googies Luncheonette*, 77 F. Supp. 2d at 489. The first method assesses the award of damages based upon the number of patrons in an establishment. *See, e.g., Googies Luncheonette,* 77 F. Supp. 2d at 489 (collecting cases); *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding damages on a per-patron basis); *Cablevision Sys. Corp v. 45 Midland Enters.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994 (same). The second method awards a flat sum for each violation.

*E.g., Googies Luncheonette*, 77 F. Supp. 2d at 489-90 (collecting cases); *see also Entm't by J&J, Inc. v. Suriel*, No. 01-cv-11460, 2003 WL 1090268 at *1 (S.D.N.Y. Mar. 11, 2003) (awarding a flat sum for basic and enhanced damages); *Kingsvision Pay-Per-View Ltd. V. Jasper Grocery*, 152 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2001); *Cablevision Sys Corp. v. Maxie's N. Shore Deli Corp.*, No. 88-cv-2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding flat sum "based on the Court's view of the equities and not the estimate of the number of patrons").

This court previously determined statutory damages for unauthorized receipt of pay-per-view events by calculating a flat sum based on licensing fee Defendants would have paid to show the Program legally. *See, e.g., Sylvestre*, 2021 WL 810338, at *6; *Miller*, 2021 WL 1394508, at *7. Plaintiff has provided evidence that if Defendants were to have purchased the rights to the broadcast legally, Defendants would have paid $1,450. (*See* ECF No. 17-4, Rate Card.) The fee is based on the Fire Code Occupancy of the Establishment, which Plaintiff alleges falls between 1 and 100. (*See* ECF No. 17-7, Site Inspection Form.) The damage amount of $1,450 is sufficient, as it is greater than the statutory minimum of $1,000, and is based on the purchase price to broadcast the Program legally. 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff is awarded statutory damages in the amount of $1,450.

## II.  Enhanced Statutory Damages under Section 605

Plaintiff additionally seeks enhanced statutory damages for willfulness pursuant to § 605(e)(3)(C)(ii) in the amount of $10,000.  (Pl. Mem at 8-9.)  The court, in its discretion, may award an enhancement of statutory damages of up to $100,000 where Plaintiff demonstrates that Defendants' violation was willful and committed for the "purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).  The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness.  *See Raco Rapdio Rest.*, 988 F. Supp. at 111; *Googies Luncheonette*, 77 F. Supp. 2d at 490-91 ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

Furthermore, the Establishment realized financial gain by broadcasting the Program because the broadcast "most likely led to an increased number of patrons, and thus to an increase in profits from food and beverages," even if the Establishment did not advertise the Program or charge a cover fee.  *Sylvestre*, 2021 WL 810338, at *6 (quoting *Taco Rapido, Rest.*, 988 F. Supp at 111).  Consequently, Plaintiff is entitled to a further enhancement of the basic statutory damages award because the record supports a finding that the Establishment affirmatively and willfully intercepted and broadcasted the Program for

financial gain, and that the Establishment could not have inadvertently intercepted Plaintiff's broadcast. (Hand Aff. ¶ 13; Compl. ¶ 24 (listing and describing the illegal ways to intercept a broadcasting program's signal.)).

In circumstances demonstrating a willful and purposeful violation, a court can assess enhanced damages in conjunction with statutory damages, and courts "typically fix the amount of enhanced damages as a multiple of the [basic] statutory damages award." *Sylvestre,* 2021 WL 810338*,* at *6 (quoting *135 Hunt Station Billiard, Inc.*, 2012 WL 4328355, at *5). This court has typically set damages at either two or three times the amount of basic statutory damages. *Id.* (setting enhanced damages award at two times basic statutory damages); *Miller*, 2021 WL 1394508 (same); *Acevedo*, 2020 WL 5134423, at *6 (same). Similarly, here, the court, in its discretion, finds that Plaintiff is entitled to enhanced damages in the amount of $2,900, or double the basic statutory damages of $1,450, for Defendants' willful violation of the Federal Communications Act. Accordingly, the court awards Plaintiff $1,450 in basic statutory damages and $2,900 in enhanced statutory damages, for total statutory damages award under the Communications Act of $4,350.00.

**III.   Statutory Damages for Copyright Infringement**

Section 504 provides for damages awards in cases of copyright infringement.  "[A]n infringer of copyright is liable for either the copyright owner's actual damages and any additional profits of the infringer . . . or statutory damages." 17 U.S.C. 504(a).  Section 504 and the cases in the Second Circuit interpreting the statute have established that the victim of a copyright infringement is entitled to elect damages based on the actual damages suffered, plus additional profits, or may elect statutory damages to be awarded within certain specified time limits.  *See Peaks Prods., Inc. v. Publications Int'l*, 996 F.2d 1366, 1380 (2d Cir. 1993) (permitting plaintiff to elect statutory remedy where actual damages were not ascertainable); *see also Aleshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 469 (2d Cir. 1985); *Engel v. Wild Oats, Inc.*, 644 F. Supp. 1089, 1091 (S.D.N.Y. 1986).

Here, Plaintiff has elected to recover statutory damages under the Copyright Act.  17 U.S.C. § 504(c); (Pl. Mem. at 11.)  Under the Act, the Court may award statutory damages of not less than $750 and not more than $30,000, as the court deems just.  17 U.S.C. § 504(c)(1).  In addition, the Act authorizes an award of enhanced damages of not more than $150,000 where the violation was willful.  17 U.S.C. § 504(c)(2).  Plaintiff argues that in considering an award of statutory damages under the Act,

the Court may consider the expenses saved and profits reaped by defendants, plaintiff's loss of revenue, the deterrent effect on the infringer and third parties, the infringer's cooperation in providing evidence concerning the value of the infringing material, and the infringer's state of mind.  (Pl. Mem. at 12 (citing *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143-44 (2d Cir. 2010))).  Plaintiff cites cases in which courts have awarded " 'two to six times the license fees defendants "saved" by not obeying the Copyright Act.' "  (*Id.* at 13) (quoting *EMI Mills Music Inc. v. Empress Hotel, Inc.*, 470 F. Supp. 2d 67, 75 (D.P.R. 2006)).

Recognizing the deterrent purpose served by an award of statutory damages and the fact that Defendants' violation was willful, as noted above, the Court imposes an award of statutory damages under the Copyright Act of $1,450 for Defendants' violation of Section 504(c)(1), and an enhanced award of $1,450 under 47 U.S.C. § 504(c)(2), in line with similar cases in this District.  *See, e.g., Miller*, 2021 WL 1394508, at *10.  As the Court has also recommended a total award of $4,350  for Defendants' willful violation of the Communications Act for the same conduct, and the award of $2,900 under the Copyright Act falls within the statutory range of $750 and $30,000 per violation, the Court finds that a total award of $7,250 for violations of the Communications Act and Copyright Act provides

adequate compensation for Plaintiff's losses and a sufficient

deterrent effect on others who would consider engaging in the

type of conduct alleged here. *See id.* at *10 (calculating

damages awards under Copyright Act in the same fashion when

defendant was also liable for Communications Act violation); *see*

*also Acevedo*, 2020 WL 5134423, at *7 (same).

## IV. **Plaintiff's Attorneys' Fees and Costs**

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), Plaintiff

is also entitled to costs and reasonable attorney's fees. *See*

*Sykes*, 997 F.2d at 1009. The Plaintiff's motion for default

judgment, however, does not contain a request for either costs

or fees. (*See* Pl. Mem. at 16). Accordingly, the Court will not

award such fees or costs.

## Conclusion

For the foregoing reasons, Plaintiff's motion for

default judgment against both Defendants is GRANTED. The Clerk

of Court is respectfully directed to enter judgment in favor of

Plaintiff and against the Establishment and Mr. Mohamed, jointly

and severally, in the amount of $7,250. The Clerk of the Court

is respectfully requested to close this case. Plaintiff is

ordered to serve a copy of this Memorandum and Order and the

judgment on both Defendants and file a declaration of service.

**SO ORDERED.**


Dated:      July 9, 2021
            Brooklyn, New York

                              ___/s/Kiyo A. Matsumoto___
                              HON. KIYO A. MATSUMOTO
                              UNITED STATES DISTRICT JUDGE